IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHARI C. HOLWEG and TIMOTHY J. HOLWEG,<br><br>        Plaintiffs,<br><br><br><br>        vs.<br><br><br><br>ACCREDITED HOME LENDERS, CHASE HOME FINANCE, ADVANCE TITLE, ETITLE INSURANCE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, and TRUSTEE,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING ADVANCE TITLE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM<br><br><br><br>Case No. 2:09-CV-1 TS |

This matter is before the Court on Defendant Advance Title's ("Advance") Motion to Dismiss for failure to state a claim. Advance argues that it had no contract with Plaintiffs and that none of the statutes and regulations cited by Plaintiffs are applicable to it due to its limited involvement in the closing of Plaintiffs' loan. Plaintiffs have failed to respond to Advance's Motion. For the reasons set forth below, the Court will grant Advance's Motion to Dismiss.

## I.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-moving party.[1]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face."[2]  All well-pleaded factual allegations in the Complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[3]  But, the court is not "bound to accept as true a legal conclusion couched as a factual allegation."[4]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[5]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  Thus, "the complaint must give the court reason to believe that this plaintiff has reasonable likelihood of mustering factual support for these claims."[7]

## II.  FACTUAL BACKGROUND

The following facts are taken from the Plaintiffs' Complaint.  Mr. and Mrs. Holweg, the Plaintiffs, are the owners and residents of a home located in Provo, Utah.  In early 2006, Plaintiffs

---

[1]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[2]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing complaint where plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[3]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4]*Bell Atlantic*, 550 U.S. at 555.

[5]*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[6]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

began investigating the opportunities for refinancing their home.  In January 2008, Mr. Holweg was disabled and unemployed, so Mrs. Holweg applied for a loan from Defendant Accredited Home Lenders, Inc. ("Accredited") in her name alone.  On the day scheduled for closing, February 21, 2006, Mrs. Holweg appeared at the premises of Advance, who was acting as the closing agent.  At that time, Mrs. Holweg was first informed that the loan would be an adjustable rate mortgage, and that Mr. Holweg would need to be present to sign the closing documents, including the adjustable rate note (the "Note").[8]  Arrangements were made to bring Mr. Holweg to the closing.  Mrs. Holweg signed the closing documents first and then left, prior to Mr. Holweg's arrival.  Mr. Holweg also signed the closing documents that day.  Neither of the Plaintiffs were provided with copies of the closing documents on the day of closing.

The Note indicated that the mortgage payments during the first three years of the loan would be $1,181.09, with an interest rate of 9.99%.  After that initial three-year period, the Note indicates that the interest rate would change every six months, and would be calculated by adding 8.49% to the London Interbank Offered Rate, or LIBOR.  The Note also provided that the interest rate could not be increased by more than 1.5% every six months, and that the interest rate would never rise above 16.99% or fall below 9.99%.

In June, 2006, Accredited sold Plaintiffs' loan to Defendant Chase Home Finance, LLC ("Chase"), and Plaintiffs made payments to Chase until January 8, 2008, at which time Chase required Accredited to take back the loan, allegedly because of irregularities in the loan.  Plaintiffs

---

[8]Docket No. 1, Ex. A.

"became delinquent in [their] payments in 2006 . . . [and] made sporadic payments in the year 2007, and in 2008."[9]

On October 4, 2007, Accredited sent a letter to Plaintiffs indicating that the Note had incorrectly identified the amount of the initial payments on Plaintiffs' loan.[10]   Specifically, Accredited indicated that, instead of monthly payments of $1,181.09, Plaintiffs would need to make monthly payments of $1,245.11.   Accredited provided revised Truth in Lending Disclosure Statements and Notice of Right to Cancel, and requested that Plaintiffs sign.  The Truth in Lending Disclosure Statements indicated that the annual percentage rate would be 12.52%, rather than the 9.99% listed on the Note.

Plaintiffs requested an accounting from Accredited regarding actual interest costs incurred and payments made.   Accredited did not respond to Plaintiffs' requests, and on March 6, 2008, Plaintiffs sent Accredited a document entitled "Notice of Intent to Rescind," in which Plaintiffs declare that they "intend to file formal Demand For Rescission of that certain Loan . . . together with the Contract, Note, Deed of Trust and attendant instruments dated on or about Feb. 21, 2006."[11] Plaintiffs assert as grounds for rescission that Accredited never provided them with required notices and disclosures.

---

[9]Docket No. 1, ¶ 12.

[10]*Id.*, Ex. B.  The letter initially was dated April 26, 2006, which corresponds to the date included on the additional documents sent with the letter.  *Id.*, Ex. C.  However, the original date has been crossed out and the letter, as submitted by Plaintiffs, has a handwritten date of October 4, 2007.

[11]*Id.*, Ex. D.

Plaintiffs argue that the interest rate on their loan was high enough to trigger the Home Ownership and Equity Protection Act ("HOEPA")[12] and the Utah High Cost Home Loan Act ("HCHLA"),[13] and that the disclosure requirements of those acts were not met.  Plaintiffs also argue that the disclosure requirements of the Real Estate Settlement Procedures Act ("RESPA")[14] were not met, in that certain booklets and the good faith estimate were not provided within three days of Plaintiffs receiving the loan application.  Plaintiffs argue that the Truth in Lending Act ("TILA")[15] was violated in numerous ways, including incorrect statements of the terms of the loan and failure to make required disclosures.  Plaintiffs have requested rescission of their contract with Accredited and various monetary penalties for the above-mentioned violations.

## III.  DISCUSSION

As a preliminary matter, Plaintiffs reference the Federal Trade Commission Act ("FTCA")[16] and certain Utah consumer protection statutes[17] in their plea for relief.  However, at no place in the Complaint do Plaintiffs identify a breach of either the FTCA or the Utah consumer protection statutes.  Therefore, to the extent that Plaintiffs' claims include causes of action under the FTCA and Utah consumer protection statutes, they will be dismissed.

---

[12] 15 U.S.C. § 1639.

[13] Utah Code Ann. § 61-2d-101, et seq.

[14] 12 U.S.C. § 2601, et seq.

[15] 15 U.S.C. § 1601, et seq.

[16] 15 U.S.C. § 41, et seq.

[17] Plaintiffs cite to "UCA Sec. 5-3-106, 402, 403," which would appear to be references to Utah Code Ann. § 5-3-106, 402, and 403.  However, those statutes do not exist, so it unclear precisely to which Utah statutes Plaintiffs are appealing.

For the remaining claims, Advance operated simply as the closing agent for Accredited, and Plaintiffs offer no factual allegations that Advance participated in the lending process in any way. In fact, Advance is mentioned only twice in the Complaint: first, as the entity which closed the loan;[18] and second, as the owner of the premises where Plaintiffs signed the closing documents, which documents were solely between Plaintiffs and Accredited.[19]  Because Advance has no contract with Plaintiffs, there is no contract to rescind.  Moreover, with the exception of RESPA, the violations of federal and state law which Plaintiffs allege are violations only when the acts or omissions are accountable to a financial institution,[20] and Plaintiffs offer no factual allegations which would support a finding that Advance is a financial institution.

With regard to RESPA, Plaintiffs identify two potential violations of RESPA, failure to provide a good faith estimate and failure to provide certain booklets.  However, the booklets are to be distributed "by *lenders* to loan applicants,"[21] and only *lenders* are responsible for providing a good faith estimate of the settlement charges.[22]  Under RESPA, Advance can only be considered a

---

[18]Docket No. 1, ¶ 4.

[19]*Id.*, ¶ 7.

[20]The TILA extends to "each individual or business that offers or extends credit," 12 C.F.R. 226.1(c).  HOEPA is a subpart of TILA, and extends to the same entities.  HCHLA applies to "Lenders," defined as "a person that: (a) offers a high cost mortgage; or (b) extends a high cost mortgage; and (c) is required to have a license as provided in Title 61, Chapter 2c, Utah Residential Mortgage Practices Act."  Utah Code Ann. § 61-2d-102(4).

[21]12 U.S.C. § 2604(d) (italics added).

[22]*Id.*, § 2604(c).

title company,[23] not a lender.  Therefore, the alleged RESPA violations cannot be attributed to Advance.

Because, as a matter of law, none of the alleged violations of federal or state law contained in Plaintiffs' Complaint can have been committed by Advance, Plaintiffs have failed to state a claim against Advance that is plausible on its face, and there is no likelihood of Plaintiffs mustering factual support for their claims.  Therefore, Advance's Motion to Dismiss will be granted

IV.  CONCLUSION

It is therefore

ORDERED that Defendant Advance Title's Rule 12(b)(6) Motion to Dismiss (Docket No. 31) is GRANTED.

DATED   June 12, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[23]*Id.*, § 2602(4).